# THE LAKE ROLAND ELEVATED RAILWAY CO. *vs.* THE HIBERNIAN SOCIETY.

*Elevated Railways—Liability for Damage to Abutting Property— Estoppel of Property Owner to Claim Damages—Prayers— Pleading.*

A municipal ordinance authorizing the defendant to construct an elevated railway in a street provided that it should be liable for any damage thereby inflicted upon adjoining property. In an action to recover damages so caused to property owned by the plaintiff, a corporation, the defence was that plaintiff was estopped to maintain the action because the president of the plaintiff and several of its members had signed a memorial approving of the railway before it was built, and had afterwards stood by and permitted the defendant to expend money in the erection without making complaint. *Held*,

1st. That since there was no evidence that the signers of the memorial had any authority to represent the plaintiff, or assumed any such authority, or that the plaintiff had adopted their action, plaintiff was not thereby estopped.

2nd. That since the plaintiff had no power to prevent the construction of the railway, the same having been authorized by the Legislature, it was not estopped by its inaction during such construction.

3rd. That even if the plaintiff were responsible for the action of the signers of the memorial, yet they must be presumed to have known that by the terms of the ordinance the defendant was required to pay for any damage that might be caused by the erection of the railway.

In an action to recover for damages caused to abutting property by the erection of an elevated railway in a city street, it is no defence that the property of the plaintiff was not actually taken, or that the road was constructed under the authority of the Legislature and was not a nuisance and the company not a trespasser.

When evidence has been excluded from the consideration of the jury, prayers which maintain that it might be made the basis of a verdict are properly rejected.

When a demurrer to a plea is sustained and the defence set up in the plea was in evidence before the jury under the general issue, no injury is done to the defendant by such ruling, since if the demurrer had not been sustained the plaintiff would have had a right to traverse the plea, and the question would have gone to the jury in the same way that it was presented at the trial.

Appeal from a judgment of Baltimore City Court. At the trial the plaintiff's first prayer instructed the jury that if the construction of defendant's elevated railway in the street opposite plaintiff's property had caused a depreciation in the market value of the same, then the plaintiff is entitled to recover. The second prayer was that the measure of damages is the difference between the market value of the property of the plaintiff, if the abutment and railroad mentioned in the evidence had not been erected, and the market value of the same property with the abutment and railroad erected so far as such difference in value is caused by the erection of the abutment and the operation of the defendant railway.

The plaintiff moved the Court to exclude from the consideration of the jury the letter from W. J. Carroll to Messrs. Steele, Semmes and Carey, and the accompanying memorial offered in evidence, and all the evidence of the witnesses in reference thereto, and to instruct the jury that, in determining upon their verdict they must not consider or give consideration to said letter or memorial, or to any of the testimony of the said witnesses in reference thereto. (*Granted*).

The defendant then offered the following prayers :

*Defendant's 1st Prayer.*—That inasmuch as it appears from the uncontradicted evidence in the cause, that William J. Carroll, during the winter of 1892, he being then the president of the plaintiff, assuming to act in the interest and on behalf of the plaintiff, and with special reference to the property owned by the plaintiff on North street, used his influence to induce the General Assembly of Maryland to pass the act of 1892, chapter 112, which ratified Ordinance No. 23, approved April 8th, 1891, of the Mayor and City Council of Baltimore, which ordinance authorized the building and maintenance of the elevated railway of the defendant on North street, opposite the property of the plaintiff, and that the said action of the said William J. Carroll was taken with the knowledge and approval of several members

of the plaintiff, and that after the passage of said confirmatory act the plaintiff stood by and permitted the defendant to erect said elevated structure in the manner prescribed by said ordinance, without asking the defendant to make any change of its plans as authorized by said ordinance, and without disavowing to the defendant the said action, of the said William J. Carroll until after said elevated structure had been entirely completed and the defendant had begun the operation of its cars thereupon, the verdict of the jury must therefore be for the defendant. (Rejected).

*Defendant's 1st Prayer* ("*A*").—That if the jury shall find from the evidence that William J. Carroll, during the winter of 1892, was the president of the plaintiff, and assuming to act in the interest and on behalf of the plaintiff, and with special reference to the property owned by the plaintiff on North street, used his influence to induce the General Assembly of Maryland to pass the act of 1892, chapter 112, which ratified Ordinance No. 23, approved April 8th, 1891, of the Mayor and City Council of Baltimore; which ordinance authorized the building and maintenance of the elevated railway of the defendant on North street, opposite the property of the plaintiff, and that the said action of the said William J. Carroll was taken with the knowledge and approval of several members of the plaintiff; and that after the passage of said confirmatory act the plaintiff stood by and permitted the defendant to erect said elevated structure in the manner prescribed by said ordinance, without asking the defendant to make any change of its plans as authorized by said ordinance, and without disavowing to the defendant the said action of the said William J. Carroll until after said elevated structure had been entirely completed and the defendant had begun the operation of its cars thereupon, then the verdict of the jury must be for the defendant. (Rejected).

*Defendant's 2nd Prayer.*—That the defendant has not actually taken any property of the plaintiff, and that the plaintiff has no property in any part of the bed of North street. (Rejected).

*Defendant's 3rd Prayer.*—That the elevated structure of the defendant, and the inclined approach complained of in this case, have been lawfully constructed in North street, with the full authority of the General Assembly of Maryland, and that the said structure and approach do not constitute a nuisance, and that the defendant is not a trespasser. (Rejected).

*Defendant's 4th Prayer.*—That the mere presence of the elevated structure and of the inclined approach to the same opposite the plaintiff's lot, does not justify the jury in finding any verdict for the plaintiff, and that the jury can only find a verdict for the plaintiff in case they shall further find, from the weight of evidence, that the construction and maintenance of the said electric railway and said inclined approach has resulted in a pecuniary loss to the plaintiff. (Granted).

*Defendant's 5th Prayer.*—That the plaintiff is not entitled to a verdict in any amount against the defendant, unless they shall believe from the weight of the evidence that the actual market value of the plaintiff's property would be greater if the defendant's elevated railway in front thereof had not been built. (Granted).

*Defendant's 6th Prayer.*—That in determining the question of alleged pecuniary loss to the plaintiff, they must consider the benefits, if any, of the railway of the defendant to the plaintiff, and they may assess such benefits as it is fairly and reasonably apparent that the property of the plaintiff has received from the building and operation of the defendant's railway other than the general benefits to the community, and the jury cannot indulge in vain speculation or conjecture. (Granted as modified).

*Defendant's 7th Prayer.*—That in considering any alleged permanent injury to the property of the plaintiff, the jury may consider that, by the terms of the ordinance under which the defendant's elevated structure was built, it is provided that in case the tracks of the Northern Central Ry. are removed from the bed of North street the Mayor and

City Council may require the defendant to remove said elevated structure and the approach thereto after one year's notice. (Rejected).

The Court below (PHELPS, J.) granted plaintiff's motion and his first and second prayers, and also granted defendant's fourth, fifth and sixth prayers, but refused to grant defendant's first, first A, second, third and seventh prayers.

The jury returned a verdict for the plaintiff for $5,000, and from the judgment thereon the plaintiff appealed.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE and BOYD, JJ.

*Francis K. Carey* and *William H. Buckler* (with whom were *Steele & Summes* on the brief), for the appellant:

The essential and controlling fact necessary to support the conclusions of law upon which the appellant founds its case is : That Mr. Carroll, while president of the society, acting with special reference to the only piece of property which it owned, used his influence to leave the impression upon the members of the General Assembly of Maryland and upon the railway company, that the society was in favor of the construction of the elevated railway in front of the society's property, and that the society wished the confirmatory act to be passed, and wished the railway built. It is impossible for the appellant to claim that this action was taken without full knowledge of the facts. The memorial procured by Mr. Carroll states that " *Our* school-house is located on North street, fronting about fifty-nine feet, and is opposite the *proposed* elevated structure of *your* company. We are heartily in favor of this enterprise, and we hope that the Legislature will pass the bill introduced ratifying *the action of the Mayor and City Council.*" In the first place, the use of the words "*our* school-house" forbids the idea that the signers could possibly have been acting in their individual capacity. The memorial is addressed directly to the railway company, and after speaking of "*your* company," declares that " we are heartily in favor of this enter-

prise." It is shown that Mr. Carroll sent this memorial to
the counsel of the railroad company for the express purpose
of having it presented to the legislative committee and to
the General Assembly. The ordinance of the Mayor and
City Council, which the memorial asked to have ratified,
was accompanied by exact and detailed plans, which were
made part of the ordinance, which had been before the pub-
lic on many occasions, and which showed the exact form
and location of the south inclined approach opposite the
property of the appellee. It is admitted that the structure
was built in exact conformity with those plans.

(1) A letter and memorial, such as the above, are suf-
ficient to estop the abutting owner who issued them from
recovering damages for injury to the market value of his
property. (2) Mr. Carroll, in drawing up and sending this
letter and memorial, was acting in his official capacity as
president of the Hibernian Society. (3) The representations
thus made by Mr. Carroll were within the apparent scope
of his authority, and the railway company was entitled to
regard them as having been duly authorized. (4) The
knowledge of this letter and memorial by the board of man-
agers of the society will be presumed from the knowledge
of their president. (5) Their failure to repudiate promptly
the letter and memorial, if unauthorized, was a ratification
of the same. (6) The right to damages provided in Ordi-
nance No. 23 is as much an object of estoppel as the right
to any other common law or statutory damages. See *Jus-
tice* v. *Town of Lancaster*, 20 Mo. App. 559; *R. R. Co.* v.
*Farrell*, 76 Mo. 183; *Ferson's Appeal*, 96 Pa. St. 140; *In
re Cooper*, 93 N. Y. 507; *Motz* v. *Detroit*, 18 Mich. 528;
*Burlington* v. *Gilbert*, 31 Iowa, 356; *White* v. *Manhattan Ry.
Co.*, 139 N. Y. 19; *Herzog* v. *Elevated Ry. Co.*, 27 N. Y.
Supp. 1034.

Similarly it has been held that the consent of an owner
to the laying out of a highway, if not revoked before the
commissioners act on the faith of it, is irrevocable, and estops
the owner from objecting. *People* v. *Goodwin*, 5 N. Y. 568;

*Marble* v. *Whitney*, 28 N. Y. 297.   And in *Fargis* v. *Walton*, 107 N. Y. 398, it is held that a license may be so far acted on that it cannot be revoked, the licensor being bound by an estoppel *in pais.*

See also, for cases of estoppel similar to the case at bar : *Merchants' Wire Co.* v. *R. R. Co.*, 44 N. W. Rep. 900 ; *Wolfe* v. *R. R. Co.*, 15 B. Monroe, 404 ; *Murdock* v. *R. R. Co.*, 10 Hun. 598 ; *Tone* v. *Columbus*, 39 Ohio, 300 ; *Steckert* v. *East Saginaw*, 22 Mich. 111 ; *Bidwell* v. *Pittsburg*, 85 Pa. 412 ; *McKnight* v. *Pittsburg*, 91 Pa. 273 ; *Burkham* v. *Railway Co.*, 122 Ind. 344 ; *Andrus* v. *Board*, 41 La. An. 687 ; 2 *Lewis, Amer. R. R. & Corp. Rep.*, p. 90, note ; *Lewis on Eminent Domain*, sec. 120 ; *Bigelow on Estoppel* (3d ed.), page 578.

A class of cases which appear to militate against this rule of estoppel may easily be distinguished, since they are cases of grading or opening streets upon the plaintiff's property, and it is said in such cases, that " petitioning is not evidence of assent that the owner's property shall be taken for public use without compensation." *Barker* v. *Tauton*, 119 Mass. 392 ; *Turner* v. *Stanton*, 42 Mich. 506 ; *Jones* v. *Bangor*, 144 Pa. 638.

Turning to the form of the memorial itself, it is well settled that, where a paper shows on its face the representative character of the party signing it, that party binds his principal even though he signs the paper as an individual.   In *McDonough* v. *Templeman*, 1 H. & J. 156 ; *Key* v. *Parnham*, 6 H. & J. 418, and in *Hodgson* v. *Dexter*, 1 Cranch, 345, the agent in each case signed in his own name, yet the principal was held liable.   In *Simpson* v. *Garland*, 72 Maine, 40, 24 Albany L. J. 353 (1881), where the note sued upon ran as follows : " We, the subscribers for Carmel Cheese Manufacturing Company   *   *   promise to pay," followed by several signatures, without official designation ; the note was held to be that of the corporation, not of the individual signers.   In *Van Leuven* v. *Bank*, 6 Lansing, 373, affirmed in 54 N. Y. 671, where the president of a bank receipted for

some bonds on letter paper stamped with the bank's name
and with those of its officers, and the receipt was worded :
" I have received "   *   *   *   (signed) " J. H. Hasbrouck "
(without official title) ; this receipt was held to be *prima
facie* at least a corporate act," and the Court said (54 N. Y.) :
" It matters not how Hasbrouck understood it, the question
was how the plaintiff did, and had a right to, understand it."
In *Randall* v. *Van Vechten*, 19 Johns. 60, where the parties
of the first part in a written contract were described as, " T.
V., J. W., C. D. C., C. H. and I. F., a committee appointed
by the corporation of Albany," and the contract was signed
by these persons as individuals, and sealed with their indi-
vidual seals, the contract was held to be a valid act of the
corporation.   In *Sanborn* v. *Neal*, 4 Minn. 126, a note be-
ginning, " We, as trustees of School District No. 10, prom-
ise, etc.," and signed with individual names, was held to be
a valid note of the corporation.   And in *Baker* v. *Chambles*,
4 Greene (Iowa), 428, a note beginning, " We, the under-
signed directors of School District No. 4," and signed with
individual names, was held to be a corporate note.   See also
*Mechanics' Bank* v. *Bank of Columbia*, 5 Wheat. 326 ; *Sher-
man* v. *Fitch*, 98 Mass. 63 ; *Sumwalt* v. *Ridgely*, 20 Md.
114 ; *Haile* v. *Peirce*, 32 Md. 330 ; *Lafflin's case*, 48 Md.
416 ; 1 *Randolph on Com. Paper*, 194.

The representation made in the memorial was within the
ostensible and usual powers of the president, as executive
head of the society, and the burden is upon the society of
proving that such representation was not valid or binding.
The railway company had the right, on receiving the me-
morial, to presume that it was duly authorized.   In *Good-
win* v. *Screw Company*, 34 N. H. 378, a verbal contract for
services between an employee and a managing director was
held binding on the corporation, and it was said : " The
actual charge and management of the general business of
a corporation is sufficient evidence of authority ; and the
company will be bound by contracts made on their behalf
within the apparent scope of the business entrusted to

him." See also *Boyington* v. *Machine Company*, 73 Ill.
534. In *Insurance Co.* v. *White*, 106 Ill. 75, it is said:
"The president and general agent can bind the corporation
within the scope of their apparent power. To permit the
denial of such power would enable such bodies to perpe-
trate monstrous frauds and injustice." To the same effect
are: *Stokes* v. *Pottery Co.*, 46 N. J. Law, 240; *Crowley* v.
*Genesee Mining Co.*, 55 Cal. 273; *Lee* v. *Pittsburg Co.*, 56
How. Pr. 373, af'd 75 N. Y. 501; *Railroad Co.* v. *Cole-
man*, 18 Ill. 299; *Railroad Co.* v. *Snead*, 19 Grattan, 354;
*Getty* v. *Barnes*, 40 Kans. 281; *Fitch* v. *Company*, 44 Mich.
74; *Booth* v. *Bank*, 50 N. Y. 396; *Bank* v. *Kohner*, 85 N.
Y. 189; *Patterson* v. *Robinson*, 116 N. Y. 193; *Steamboat
Co.* v. *McCutcheon*, 13 Pa. 13; 4 *Thompson on Corporations*,
sec. 4617.

Inasmuch as the board of managers had notice of this
memorial, it was their duty to have promptly repudiated it,
if it was unauthorized. By not doing so they must be
held to have ratified it, and the notice of repudiation which
they gave by bringing this action came too late. *Elysville
Co.* v. *Obisko Co.*, 1 Md. Ch. 399, (affirmed in 5 Md. 159);
*Canal Bridge* v. *Gordon*, 1 Pick. 297, (approved in *Bank* v.
*Dandridge*, 12 Wheat. 73); *Shermantown* v. *Morris*, 43
Kans. 282; 2 *Lewis, Railroad and Corp. Rep.*, 399; *Kent*
v. *Mining Co.*, 78 N. Y. 159; *Woodbridge* v. *Proprietors*, 6
Vt. 204; *Mining Co.* v. *King*, 45 Ga. 334; *Ragland* v.
*McFall*, 27 N. E. Rep. 75; *Fort Worth* v. *Hitson*, 80 Tex.
216; *Sheldon Co.* v. *Eickemeyer*, 90 N. Y. 614; *Kelsey* v.
*Bank*, 69 Pa. 426; *Morawetz on Private Corporations*, sec.
618. The five last cited authorities are approved and fol-
lowed in *Stokes* v. *Detrick*, 75 Md. 263, where a deed made
by directors without authority from their stockholders was
held valid notwithstanding, and this Court said: "If an
unauthorized transfer is made, it may be ratified by the
assent of the stockholders. And such assent may be in-
ferred from their failure to protest against and promptly
condemn the unauthorized act of the officers of the cor-
poration."

*Michael A. Mullin* and *James McColgan,* for the appellee.

The appellee contends that it is not estopped from bringing this suit by anything contained in the letter of William J. Carroll and the memorial accompanying the same.   First.   Because neither said William J. Carroll nor any of the persons who signed said memorial were authorized to act for or on behalf of the Hibernian Society, and did not profess to act for said society, and no person or persons except the board of directors or governing body of a corporation are authorized to act for or bind it, without authority either expressed or necessarily implied ; not even a majority of the directors or all of them separately, nor any number of stockholders are authorized to bind a corporation by their unauthorized acts.   *Morawetz on Corporations,* secs. 227, 232, 234 ; 1 *Beach on Corporations,* sec. 224 ; *Davis* v. *Gemmell,* 70 Md. 376 ; same case, 73 Md. 536–537 ; same case, 75 Md. 553 ; *Lemon* v. *Railroad Company,* 4 Md. 231.

Second.   Because the by-laws of this corporation do not give the president or its individual members authority to act for it in this matter, and the scope of authorities of officers and agents of corporation is necessarily determined by the by-laws.   *Beach on Corporations,* 187 ; *Scoville* v. *Thayer,* 105 U. S. 143, 151.

Third.   Because it is not shown that the appellant was influenced in its conduct by this memorial or letter.   *Bigelow on Estoppel* (5th ed.), 3, 453 ; *Homer* v. *Grosholz,* 38 Md. 525–6.

Fourth.   Because the memorial asking the Legislature to ratify the action of the Mayor and City Council must necessarily be assumed to ask or contemplate the ratification thereof in its entirety and an important part of this ordinance declares that the North Avenue Railway Company of Baltimore City (now the Lake Roland Elevated Railway Company), by the acceptance of the privileges hereby conferred expressly agrees that it shall be responsible for injuries judicially ascertained to be done to private property

or to persons by the construction or use of said elevated crossing, and the appellant having accepted the terms of the ordinance would not be relieved from the responsibilities imposed thereby, even if the appellee had formally assented to the passing of such ordinance and the act of the General Assembly ratifying the same.

Fifth. Whether Carroll's action was intended to be unofficial or was *ultra vires*, his knowledge cannot be imputed to the society so as to work an estoppel.    *U. S. Ins. Co.* v. *Shriver*, 3 Md. Ch. 388 ; *Winchester* v. *Railroad Co.*, 4 Md. 239 ; *Genl. Ins. Co.* v. *U. S. Ins. Co.*, 10 Md. 529 ; *Boyd* v. *Canal Co.*, 17 Md. 210 ; *Glenn* v. *Williams*, 60 Md. 112 ; *Gemmell* v. *Davis*, 75 Md. 653 ; *Davis* v. *Gemmell*, 73 Md. 537 ; 70 Md. 376.

· As to the defendant's second and third prayers there is neither evidence nor pleadings in this case to justify the Court in granting either of them.   They are bad in form, inasmuch as they would have the Court not only instruct the jury as to the law, but compel them to assume facts, which, if pertinent, it was the peculiar province of the jury to find or not to find.   They are bad in substance, as they are intended virtually to tell the jury that they should not find for the plaintiff (1) unless its property was taken, or (2) unless the structure was a nuisance ; both of which propositions are contrary to the express rulings of this Court. If they were not intended to have this result, they were instructions without any logical connection with the case. In either case they were properly rejected.   The defendant's seventh prayer is objectionable in asking the Court to submit to the jury facts of which there is no evidence whatever in the case.

BRYAN, J., delivered the opinion of the Court.

The Hibernian Society of Baltimore, a body corporate and politic, brought suit against the Lake Roland Elevated Railway Company for damages alleged to have been caused to its lot of ground and improvements by the elevated structure of the defendant.   The suit was tried on the plea of *non cul.*

The plaintiff offered evidence tending to show that this structure had caused damage to its property, which was variously estimated from five thousand to ten thousand dollars.   The defendant offered testimony tending to prove that the building and maintenance of the structure had increased the market value of the property.   This question was fairly submitted to the jury and decided by them.   The defendant, however, contends that the plaintiff was barred by an estoppel from maintaining this suit.   It offered evidence that a gentleman, who was president of the Hibernian Society, and several of its members, had signed a paper heartily approving of the elevated road, and expressing the hope that the Legislature would ratify the ordinance of the Mayor and City Council, which authorized its construction. It also offered in evidence the minutes of the society and certain of its by-laws.   There is no evidence whatever that the signers of this petition had any authority to represent the society, or that they assumed to have any such authority, or that the society in any way recognized, approved or adopted their action.   The gentleman who was president at the time when the memorial was signed died in August, 1892.   The names of twenty-two persons are appended to the printed copy of the memorial which was offered in evidence.   Sixteen of them were examined in behalf of the defendant.   Some of them deny having signed and some do not remember whether they signed or not.   But not one of them, according to his testimony, represented, or professed to represent, the Hibernian Society.   The by-laws offered in evidence show that neither the president nor any of them had any such authority.   The minutes of the society show no action authorizing or ratifying the memorial, and it is shown that the subject of the railway had never been brought to its attention at any meeting until December 1st, 1892, when the masonry of the elevated structure was two feet high, and that a committee appointed at that meeting called, on the following day, on the counsellor of the society and instructed him to institute legal proceedings

to stop the work.   The evidence offered by the defendant was admitted, subject to exception.   It utterly fails to impose on the Hibernian Society any responsibility whatever for the memorial.   On the motion of the plaintiff's counsel, the Court excluded it from the consideration of the jury. There was then no question founded on it for the jury, and those prayers of the defendant were properly rejected which maintained that it might be made the basis of a verdict. The right of the plaintiff to recover depended on the question whether its property had been injured, and not on the questions stated in the second, third and sixth prayers of the defendant.   They had no connection with this question, and were also properly rejected.

Before the trial of the issue before the jury the defendant filed a plea setting forth certain averments, which were relied on as creating an estoppel.   The plaintiff demurred, and the Court sustained the demurrer.   We infer from the briefs of the counsel that the Court made this ruling on the ground that the plea was equivalent to the general issue, and that therein it violated a well-known rule of pleading. The defence set up in this plea was made in the evidence before the jury.   If the Court had overruled the demurrer, the plaintiff would have had a right to traverse the plea and the question would have gone to the jury on the evidence in the same way as it was presented at the trial.   So no possible injury was done to the defendant, even on the supposition that the plea was receivable under technical rules.

It was said in the argument that the Hibernian Society stood by and permitted the defendant to expend large sums of money in the erection of the elevated structure, without making any complaint; and a legal proposition was argued on the basis of this statement.   It is not perceived how the society could have made any successful resistance to the building of the structure.   It was authorized by law, and it was not in the power of any Court in the land to arrest it. The supreme legislative power of the State gave the defendant permission to build it, imposing on it, nevertheless, the

duty of paying for any damage which might be inflicted by it.   The society at its first meeting after the commencement of the work, directed legal proceedings to be instituted to prevent its prosecution.   But as this was not possible, it adopted the only legal remedy which it was competent to take.   There was also a great deal of earnest argument for the purpose of showing that the persons who signed the memorial in favor of the legislative ratification of the ordinance were estopped from afterwards maintaining a claim for damages.   As the Hibernian Society is not responsible for their action, it is not, perhaps, strictly necessary for us to consider this question.   We may, however, say that those who were in favor of ratifying the ordinance which gave the right to build the elevated road must be presumed to have known that the railway company, by the terms of the ordinance, was required to pay for any damage which might be done by its construction.   It cannot be assumed that they expected or desired that the company should be exempted from the responsibilities which were imposed by the very ordinance which it was so anxious to procure.

*Judgment affirmed.*

(Decided June 17th, 1896).